

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00231-CV

## IN THE INTEREST OF M.R.H., A CHILD

**From the 413th District Court**
**Johnson County, Texas**
**Trial Court No. DC-D202000896**

## MEMORANDUM OPINION

After a bench trial, the parental rights of B.C.H. and L.A.L. were terminated as to their child, M.R.H. Only B.C.H. has appealed. In six issues, B.C.H. challenges the sufficiency of the evidence supporting the three predicate findings, the sufficiency of the evidence supporting the best-interest finding, the trial court's rejection of his affirmative defense to subsection 161.011(b)(1)(O) of the Texas Family Code, and the trial court's failure to grant a motion to extend the dismissal deadline in this case. Because we overrule all of B.C.H.'s issues, we affirm.

## The Three Predicate Findings

In his first three issues, B.C.H. contends that the record does not contain legally or factually sufficient evidence to support the trial court's predicate findings under sections 161.001(b)(1)(D), (b)(1)(E), and (b)(1)(O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (b)(1)(E), (b)(1)(O).

### STANDARD OF REVIEW

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002); *In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009); *see also In re J.F.-G.*, 612 S.W.3d 373, 381-82 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). If multiple predicate violations are found by the factfinder, we will affirm based on any one finding because only one finding is necessary for termination of parental rights. *See In re J.S.S.*, 594 S.W.3d 493, 503 (Tex. App.—Waco 2019, pet. denied). Moreover, we give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge "of the credibility of the witnesses and the weight to give their testimony." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

**DISCUSSION**

Termination under section 161.001(b)(1)(E) requires clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). To endanger means to expose to loss or injury, to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). An endangerment finding often involves physical endangerment, but it is not necessary to show that the parent's conduct was directed at the child or that the child suffered actual injury. *Boyd*, 727 S.W.2d at 533. The specific danger to a child's physical or emotional well-being need not be established as an independent proposition, but it may be inferred from parental misconduct. *Id.* In our endangerment analysis pursuant to section 161.001(b)(1)(E), we may consider conduct both before and after the Department removed the children from their parent. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

In the instant case, L.A.L., M.R.H.'s mother, testified that she was in a relationship with B.C.H. for a year-and-a-half and that the relationship culminated with the birth of M.R.H.[1] L.A.L. recalled that there were incidents of domestic violence between B.C.H. and her. Specifically, L.A.L. stated that:

---

[1] L.A.L. executed an affidavit of voluntary relinquishment prior to trial. She does not challenge the termination of her parental rights to M.R.H.

The abuse started while I was pregnant. I was five months pregnant. I had caught him cheating and I was trying to leave and he put his hands around my neck and shoved me up against the wall. I pushed him away and he fell back and broke a glass coffee table. I tried to run out, he grabbed my arm, left a bruise. I had no clothes on. I just had a shirt and no underwear. I was pregnant in Arlington. I had to walk the streets for hours until I felt safe enough to come back.

L.A.L. feared for her life because of the incident.

When asked if there had been any other incidents of domestic violence, L.A.L. responded,

Yes. I believe [M.R.H.] was just barely a few weeks old and I was holding him in my arms. I don't remember what the argument was about, but I was trying to call the police because he was threatening me. He grabbed my tablet and my phone and he smashed them. I got on the laptop and I texted my mom and told her to call 911. The police came, they investigated and they didn't do anything to arrest him. I didn't want to press charges.

L.A.L. denied that B.C.H. caused her any physical injury during this incident. However, she recounted that:

I was sitting on the couch holding [M.R.H.] in my arms and he was coming towards me to take [M.R.H.] from me, and I was worried that he was going to do something to him or me, so I was in the course of protecting my baby. So I just hit him and kicked him and scratched him in the face and the police came and they just said that that was defense marks and that [B.C.H.] had agreed that I was defending myself against him.

Later, L.A.L. testified about an incident of animal abuse involving B.C.H. According to L.A.L., B.C.H. got mad at the family cat for urinating on the carpet and attempted to drown the cat. B.C.H. also punched the cat in the face, breaking the cat's

teeth. L.A.L. emphasized that B.C.H. engaged in animal abuse on over ten occasions. L.A.L. also stated that B.C.H. told her that he was going to kill her if she ever left him.

Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment. *See In re B.J.B.*, 546 S.W.2d 674, 677 (Tex. Civ. App.—Texarkana 1977, writ ref'd n.r.e.); *see also Sylvia M. v. Dallas County Child Welfare Unit*, 771 S.W.2d 198, 201-04 (Tex. App.—Dallas 1989, no writ). Abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child. *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied); *see Ziegler v. Tarrant County Child Welfare Unit*, 680 S.W.2d 674, 678 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.) (noting that violent or abusive conduct by someone within the household is an environment that endangers children).

L.A.L.'s testimony described several instances of domestic violence and animal abuse that B.C.H. engaged in, which demonstrates a propensity for violence that may be considered as evidence of endangerment. *See Sylvia M.*, 771 S.W.2d at 201-04; *see also Ziegler*, 680 S.W.2d at 678; *In re B.J.B.*, 546 S.W.2d at 677. This is of particular importance given the reason that four-month-old M.R.H. was removed from the home. The record shows that B.C.H. was alone with M.R.H. for approximately forty-five minutes while L.A.L. was out of the house, and when she returned, the paramedics were at the house treating M.R.H. for an apparent seizure. When examined by a doctor, M.R.H. was

discovered to have "several hematomas, ligament injuries, as well as fractures on his vertebrae, spinal hemorrhage and healing fractures to his ribs." B.C.H. was arrested and ultimately charged for the injuries sustained by M.R.H.

Moreover, S.M.B., L.A.L.'s mother, recalled speaking to B.C.H. on the phone several times on the day that M.R.H. had a seizure. S.M.B.'s first conversation with B.C.H. involved him asking where L.A.L. was. S.M.B. described B.C.H. as "upset because he couldn't find her. He didn't know where she was." During this conversation, B.C.H. was alone with M.R.H. S.M.B. called L.A.L., but was unable to get ahold of her. S.M.B. informed B.C.H. that she could not reach L.A.L. S.M.B. heard M.R.H. "cooing, not crying or anything, but just kind of cooing in the background, and I said, just take care of [M.R.H.] and I'll keep trying to find her and I'll let you know if I hear anything." As S.M.B. informed B.C.H. of her subsequent efforts to reach L.A.L., B.C.H. became "furious. He started making all kinds of allegations that she's cheating on me, I know she's cheating on me. She needs to get back here and take care of this kid . . . ." In S.M.B.'s next conversation with B.C.H. approximately ten minutes later, B.C.H. "was hysterical and said [M.R.H.] is not breathing. What do I do?"

S.M.B. also testified that she observed B.C.H. to have a "hot temper" and that she "heard him and [L.A.L.] fighting constantly, like several times per week, and eventually, I said no, no more. I'm not going to let him do that, so I asked him to leave [S.M.B.'s house]." Both S.M.B. and L.A.L. are fearful of B.C.H.'s temper.

Additionally, CPS caseworker Brandi Jones testified that B.C.H. tested positive for marihuana in November 2020, while this case was pending. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) (noting that illegal narcotics use supports a finding that a child's surroundings endanger his physical and emotional well-being); *see also In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied) (stating that a history of illegal drug use is conduct that subjects a child to a life that is uncertain and unstable, thus endangering his physical and emotional well-being). Jones further testified that B.C.H. failed to complete his family service plan, including failing to undergo a psychological examination; failing to complete individual counseling; failing to complete the Batterers' Intervention Prevention Program; failing to meet with Jones in person or allow her to do a home visit; refusing to provide Jones with proof of employment, although he was allegedly employed for three months of this case; and refusing to provide verification of housing. *See In re R.F.*, 115 S.W.3d 804, 811 (Tex. App.—Dallas 2003, no pet.) (considering, as part of the endangering-conduct analysis, a parent's failure to complete a service plan).

Based on the foregoing evidence, we conclude the evidence is sufficiently clear and convincing to support the trial court's findings under section (b)(1)(E). Looking at the evidence in the light most favorable to the finding of the trial court, we conclude that a reasonable factfinder could have formed a firm conviction that B.C.H. "engaged in conduct or knowingly placed the child with persons who engaged in conduct which

endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *see In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. Moreover, the disputed evidence on the matter is not so significant that the factfinder could not have formed a firm conviction or belief that its finding was true. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *see also In re J.O.A.*, 283 S.W.3d at 345; *In re J.F.C.*, 96 S.W.3d at 266-67.

Moreover, because only one finding is necessary for the termination of parental rights, we need not address B.C.H.'s complaints regarding the predicate grounds under sections (b)(1)(D) and (b)(1)(O). *See* TEX. R. APP. P. 47.1, 47.4; *see also In re J.S.S.*, 594 S.W.3d at 503; *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (requiring a review of findings under sections (b)(1)(D) or (b)(1)(E), if such findings were made by the trial court). Accordingly, we overrule B.C.H.'s first three issues.

### B.C.H.'s Affirmative Defense to Section 161.001(b)(1)(O)

In his fourth issue, B.C.H. argues that the evidence is legally and factually insufficient to establish that: (1) he did not prove by a preponderance of the evidence that he was unable to comply with the specific provisions of the family service plan under section 161.001(b)(1)(O); (2) he failed to make a good-faith effort to comply with the family service plan; and (3) any failure to comply is not attributable to any fault of his own. Again, because only one predicate finding is necessary for termination of parental rights, s*ee In re J.S.S.*, 594 S.W.3d at 503, and because we have already concluded that the

record contains legally and factually sufficient evidence to support the trial court's finding under section 161.001(b)(1)(E), we overrule B.C.H.'s fourth issue.

## The Best-Interest Finding

In his fifth issue, B.C.H. complains that the evidence is legally and factually insufficient to support the finding that termination of his parental rights to M.R.H. is in M.R.H.'s best interest. We disagree.

### APPLICABLE LAW

In determining the best interest of the child, a number of factors are considering, including (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012). The Department need not prove all the *Holley* factors as a "condition precedent" to termination, and the absence of evidence of some factors does not bar the factfinder from finding by clear and convincing evidence that termination of parental rights is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27; *see Spurck v. Tex. Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 222 (Tex. App.—Austin 2013, no pet.).

Furthermore, the *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree*, 907 S.W.2d at 86.

**DISCUSSION**

In the instant case, M.R.H. was four months old at the time of removal and approximately fifteen months old at the time of trial; thus, he was too young to express his desires. However, the child has been placed with a foster family since removal, and this placement is safe and stable with the child being cared for appropriately. *See In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting that when a child is too young to express his or her desires, the court may consider the quality and extent of his or her relationships with prospective placements, and evidence that a child is well cared for and is bonded with the foster family and has spent minimal time in the presence of his or her parents). The foster mom emphasized that M.R.H. is bonded to her and that her family would like to adopt him. *See In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc) (stating that the need for permanence is a paramount consideration for a child's present and future physical and emotional needs). Moreover, Jones noted that despite the numerous injuries sustained by M.R.H. and his continued need for physical therapy, M.R.H. is doing well in his current placement and that all of his needs are being met.

The record also demonstrates several instances of domestic violence and animal abuse, some of which transpired in M.R.H.'s presence. *See Williams v. Williams*, 150

S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied) (noting that evidence of past misconduct or neglect can be used to measure a parent's future conduct); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is prologue."); *see also In re A.M.*, 385 S.W.3d 74, 82-83 (Tex. App.—Waco 2012, pet. denied) (concluding that evidence of Mother's history of neglecting or endangering children by exposing them to domestic violence supported the trial court's finding that termination was in the child's best interest).

Furthermore, Jones recounted that B.C.H. made little progress on his family service plan and that he tested positive for marihuana while this case was pending. *See Wilson v. State*, 116 S.W.3d 923, 925 (Tex. App.—Dallas 2003, no pet.) (noting that a parent's poor parenting skills and lack of motivation to "learn how to improve those skills" supports a finding that termination is in the child's best interest); *In re N.J.H.*, 575 S.W.3d 822, 832 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (stating that illegal drug use is a circumstance that can contribute to an unstable lifestyle and is relevant in determining present and future danger to a child's physical and emotional well-being); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("The fact finder can give great weight to the significant factor of drug-related conduct." (internal citations & quotations omitted)). Additionally, B.C.H. refused to allow CPS to conduct a home study on where he was staying, and B.C.H. did not maintain stable housing or employment throughout this case. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex.

App.—Fort Worth 2007, no pet.) ("Evidence of a parent's unstable lifestyle can also support a factfinder's conclusion that termination is in the child's best interest."). Nor does the record reflect that B.C.H. has future plans for his living situation and employment should his parental rights to M.R.H. not be terminated. In fact, B.C.H. stands charged for the injuries sustained by M.R.H. on the day in question. And because of his pending charges, B.C.H. has not seen M.R.H. since his removal more than a year ago.

Based on our review of the record, we find that the above-mentioned evidence addresses several of the *Holley* factors and that those factors weigh in favor of the trial court's order of termination. *See* 544 S.W.2d at 371-72. We therefore conclude that the evidence presented in legally and factually sufficient for a factfinder to form reasonably a firm belief or conviction that termination of B.C.H.'s parental rights is in the best interest of M.R.H. Accordingly, we overrule B.C.H.'s fifth issue.

### B.C.H.'s Motion to Extend the Dismissal Deadline

In his sixth issue, B.C.H. asserts that the trial court erred by failing to grant his motion to extend the dismissal deadline of this case.

We review a trial court's decision to grant or deny an extension of the dismissal deadline under an abuse-of-discretion standard. *See In re M.S.*, 602 S.W.3d 676, 679 (Tex. App.—Texarkana 2020, no pet.); *see also In re D.W.*, 249 S.W.3d 625, 647 (Tex. App.—Fort Worth 2008, pet. denied). Pursuant to section 263.401(a), a termination suit filed by the

Department is automatically dismissed on the first Monday after the first anniversary of the date a trial court renders a temporary order appointing the Department as temporary managing conservator if the trial court has neither commenced the trial on the merits nor granted an extension. TEX. FAM. CODE ANN. § 263.401(a). The trial court may grant an extension of up to 180 days if it finds that "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the [D]epartment and that continuing the appointment of the [D]epartment as temporary managing conservator is in the best interest of the child. *Id.* § 263.401(b). The focus is on the needs of the child, whether extraordinary circumstances necessitate the child remaining in the temporary custody of the Department, and whether continuing such is in the best interest of the child. *Id.*; *see In re M.S.*, 602 S.W.3d at 679.

In his first amended motion for a de novo hearing and motion for new trial and at the de novo hearing, B.C.H. argued that the dismissal date should have been extended to allow him to resolve his criminal matter to participate more fully in the termination case. In addition, B.C.H. asserted that the dismissal date should have been extended to complete a social study on his cousin, to allow him to participate in mediation, and to allow him more time to complete his family service plan.

The record reflects that, despite his pending criminal charges, B.C.H. could participate in services without making admissions that could be used against him later and that these services would be paid for by the Department. Jones testified regarding

these services, many of which were available by Zoom or the telephone.  However, Jones emphasized that B.C.H. "refused to cooperate."  Jones further noted that B.C.H. failed to undergo a psychological examination; failed to complete individual counseling; failed to complete the Batterers' Intervention Prevention Program; failed to meet with Jones in person or allow her to do a home visit; refused to provide Jones with proof of employment, although he was allegedly employed for three months of this case; and refused to provide verification of housing during the pendency of this case.

Regarding B.C.H.'s criminal case, the Department stated at the de novo hearing that the criminal case is set for January 2022, but there is no guarantee that the case would be resolved by then.  Accordingly, the Department mentioned "we may find ourselves in the exact same position we're in today, waiting for a criminal case to resolve so that we can get this case started, what will then be a year-and-a-half after [M.R.H.] came in to the Department's care."  Furthermore, the State alleges that B.C.H.'s confinement is the result of his actions, and "'[a]ctions that are considered to be the parent's fault will generally not constitute extraordinary circumstances.'"  *In re M.S.*, 602 S.W.3d at 680 (quoting *In re J.S.S.*, 594 S.W.3d at 501); *see, e.g., In re A.S.*, No. 10-12-00104-CV, 2016 Tex. App. LEXIS 10697, at *6 (Tex. App.—Tyler Sept. 30, 2016, no pet.) (mem. op.) ("A parent's [confinement or] incarceration is generally considered to be the parent's fault and not an extraordinary circumstance.").

With respect to the social study on B.C.H.'s cousin, the record indicates that the Department did not consider her initially because the Department explored placements with the mother's family first. The cousin testified that she was eventually considered on April 8, 2021. She also acknowledged that the Department did a home study that lasted four-and-a-half hours. However, the Department decided to not place M.R.H. with the cousin because her fiancée failed to meet with the Department or attend three scheduled visits. The Department determined that it could not make any recommendation regarding the cousin without meeting all adult home members.

And finally, mediation in this case was scheduled for the day prior to trial. However, Jones testified that B.C.H. had not contacted her since early July 2021—about two months prior to trial. And despite the Department's ability to accommodate, B.C.H. did not request that mediation be conducted via Zoom, nor did he request transportation assistance. Rather, he simply chose not to attend mediation.

Based on the foregoing, the trial court could determine that B.C.H. failed to demonstrate extraordinary circumstances and that it would be in M.R.H.'s best interests for the extension to be granted. Section 263.401's "clear preference is to complete the process within the one-year period . . . . Because the statutory language prefers finality to suit and because we cannot say that the trial court abused its discretion in denying [the] extension," we overrule B.C.H.'s sixth issue. *In re A.J.M.*, 375 S.W.3d 599, 604-05 (Tex. App.—Fort Worth 2012, pet. denied); *see In re M.S.*, 602 S.W.3d at 680.

## Conclusion

Having overruled all of B.C.H.'s issues on appeal, we affirm the trial court's order of termination.

> STEVE SMITH
> Justice

Before Chief Justice Gray,
      Justice Johnson,
      and Justice Smith
Affirmed
Opinion delivered and filed December 1, 2021
[CV06]

